UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

WILLIAM C.[1],                            )
                                          )
                    Plaintiff,            )
                                          )
         v.                               )        Case No. 4:18-cv-22
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, William C., on April 4, 2018.  For the following reasons, the

decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, William C., filed an application for Disability Insurance Benefits on

November 7, 2014, alleging a disability onset date of July 17, 2014.  (Tr. 17).  The Disability

Determination Bureau denied his application initially on April 20, 2015, and again upon

reconsideration on June 23, 2015.  (Tr. 17).  William C. subsequently filed a timely request for a

hearing on July 1, 2015.  (Tr. 17).  A video hearing was held on January 18, 2017, before

Administrative Law Judge (ALJ) Edward Kristof, and the ALJ issued an unfavorable decision on

March 31, 2017.  (Tr. 17-29).  Vocational Expert (VE) Richard Riedl appeared at the hearing.

(Tr. 17).  The Appeals Council denied review, making the ALJ's decision the final decision of

the Commissioner.  (Tr. 1-6).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

William C. met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 19). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that William C. had not engaged in substantial gainful activity since July 17, 2014, the alleged onset date. (Tr. 19).

At step two, the ALJ determined that William C. had the following severe impairments: rheumatoid arthritis, large granular lymphocytic leukemia, and cervical degenerative disc disease. (Tr. 19). The ALJ concluded that William C.'s severe impairments caused more than a minimal limitation on his ability to engage in basic work activities. (Tr. 19). The ALJ also considered, singly and in combination, William C.'s non-severe impairments and concluded that the non-severe impairments did not cause more than minimal limitations in his ability to perform basic work-related activities. (Tr. 21). Additionally, the ALJ indicated that William C.'s alleged fibromyalgia was a non-medically determinable impairment. (Tr. 20).

The ALJ found that William C.'s mental impairments of depression and anxiety did not cause more than minimal limitations in his ability to work. (Tr. 20). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which included:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 21). The ALJ determined that William C. had no limitations in understanding, remembering, or applying information; no limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing himself. (Tr. 21). Because his mental impairments caused no more than "mild" limitations in any of the functional areas, the ALJ determined that they were non-severe. (Tr. 22).

At step three, the ALJ concluded that William C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22). The ALJ considered listings 1.04, disorders of the spine, 13.06, leukemia, and 14.09, inflammatory arthritis. (Tr. 22-23). The ALJ indicated that no treating or examining physician indicated findings that would satisfy any listed impairment. (Tr. 22).

After consideration of the entire record, the ALJ then assessed William C.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) where the claimant can lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently. He can stand and/or walk up to 6 hours in an 8-hour workday and sit for at least 6 hours in an 8-hour workday with a sit/stand option of sitting 30 minutes and standing for 10 minutes. He can never climb ladders, ropes, or scaffolds, but can occasionally balance, stoop, kneel, crouch, and crawl. Manipulatively, he can occasionally handle and finger bilaterally. Environmentally, he can never have concentrated exposure to dust, fumes, gases, and other environmental pollutants. Mentally, he can perform simple, routine, and repetitive tasks, performing essentially the same task in the same place every day, but the work must be free of fast-paced work or pace-rate work.

(Tr. 23). The ALJ explained that in considering William C.'s symptoms he followed a two-step process. (Tr. 23). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce William C.'s pain or other symptoms. (Tr. 23). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited William C.'s functional limitations. (Tr. 23). The ALJ found that William C.'s medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 24). However, his statements concerning the

intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24).

At step four, the ALJ concluded that William C. had no past relevant work. (Tr. 28). Considering William C.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that he could perform, including parking booth cashier (50,000 jobs nationally), production inspector (35,000 nationally), and greeter (15,000 jobs nationally). (Tr. 29). The ALJ found that William C. had not been under a disability, as defined in the Social Security Act, from July 17, 2014 through the date of this decision, March 31, 2017. (Tr. 29).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

*Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of

5

proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**; see **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

William C. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings.  In his appeal, William C. has argued that:  (1) the ALJ's RFC and the hypothetical questions to the VE failed to include limitations regarding his ability to reach in any direction or climb stairs; and (2) the ALJ's evaluation of his subjective symptoms overemphasized his daily activity and failed to account for his fatigue.

William C. has argued that the ALJ failed to include all the limitations that are supported by the record in the RFC and in the hypothetical questions to the VE.  "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." **Young v. Barnhart**, 362 F.3d 995, 1000 (7th Cir. 2004); see **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as

well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

The Seventh Circuit has held that "[h]ypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." ***Steele v. Barnhart,*** 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original and internal citations omitted); *see* ***Yurt v. Colvin,*** 758 F.3d 850, 857 (7th Cir. 2014) ("[B]oth the hypothetical [question] posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). "The reason for [this] rule is to ensure that the vocational expert does not refer to jobs the [claimant] cannot work because the [vocational] expert did not know the full range of the [claimant's] limitations." ***Steele,*** 290 F.3d at 942. "Both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." ***Burmester v. Berryhill,*** 920 F.3d 507, 511 (7th Cir. 2019).

William C. has argued that the ALJ failed to include any limitations in the RFC regarding his ability to reach in any direction. Therefore, he contends that the ALJ did not ask the VE about how such limitations might impact the availability of jobs. William C. asserts that the medical records support limitations of reaching in all directions. Specifically, he indicated that he had shoulder pain, left elbow pain and tenderness, and that physical examinations revealed painful external rotation and/or motion of the shoulders.

The Commissioner contends that the ALJ found no treatment records, medical source statements, diagnostic test results, or other objective evidence of significant issues resulting in the inability to perform fine or gross movements that would support William C.'s alleged reaching limitation. Dr. Kennedy, a medical consultant, determined that William C. was able to

perform fine and gross movements effectively on a sustained basis. (Tr. 23). Additionally, the State agency medical consultants, who the ALJ gave some weight to their opinions, found no limitations in William C.'s ability to reach in any direction. (Tr. 83-84, 95-98). The ALJ discussed William C.'s treatment records throughout his decision. (Tr. 23-27). He also considered relevant medical evidence, opinion evidence, and testimony to formulate the RFC. Notably, William C. has not demonstrated that the evidence in the record supported a limitation that would preclude or significantly limit his ability to reach in any direction.

William C. has argued that the ALJ failed to include a limitation about climbing stairs in the RFC and to ask the VE how such a limitation might impact the availability of jobs. William C. represents that he testified that he was exhausted after attempting to climb stairs. (Tr. 50). Additionally, he complained to his doctors about fatigue. (Tr. 409). Dr. Kennedy noted that William C.'s fatigue and myalgias from his large lymphocytic granular leukemia and rheumatoid arthritis were concerning. (Tr. 411, 415). The State agency medical consultants determined that William C. could perform a range of light work, but that he never could climb ladders, ropes, or scaffolds and occasionally could climb ramps and stairs. (Tr. 27, 83, 96).

The RFC indicated that William C. never should climb ladders, ropes, or scaffolds, but that he occasionally could balance, stoop, kneel, crouch, and crawl. (Tr. 23). The Commissioner has acknowledged that the omission of the specific limitation about climbing stairs was a scrivener's error. Yet, despite failing to include the limitation in the RFC, the ALJ's hypothetical questions asked the VE to assume an individual who "can never climb ladders, ropes, or scaffolds, can occasionally perform all other postural maneuvers…" (Tr. 57). In response, the VE identified three jobs that the individual could perform.

The harmless error doctrine applies to judicial review of administrative decisions, but only where the agency's decision is "overwhelmingly supported by the record." *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010). Therefore, the court must be able to say with great confidence that the ALJ would not reach a different conclusion on remand if the errors were corrected. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.").

William C. has not demonstrated that the ALJ's decision would have been different had the ALJ expressly included a stair climbing limitation in the RFC. The ALJ's hypothetical asked the VE to assume an individual who "can occasionally perform all other postural maneuvers." In considering this limitation along with others, the VE testified that William C. could perform jobs existing in significant numbers in the national economy. Accordingly, the ALJ relied on the VE's testimony as support for his step five finding. The ALJ also did not ignore the opinions of the State agency medical consultants who concluded that William C. occasionally could climb ramps and stairs. It appears from the decision that the ALJ included postural limitations, specifically, the climbing limitation, in his ultimate decision. The court finds that the ALJ's omission was harmless, and therefore does not require remand.

Next, William C. has argued that the ALJ overemphasized his daily activity when evaluating the persistence and intensity of his symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;

(ii) Location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) Type, dosage, effectiveness, and side effects of any medication;

(v) Treatment, other than medication, for relief of pain or other symptoms;

(vi) Other measures taken to relieve pain or other symptoms;

(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The Seventh Circuit repeatedly has emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g.,* ***Bjornson v. Astrue,*** 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and

activities in a full-time job are that a person has more flexibility in scheduling the former than

the latter, can get help from other persons . . . and is not held to a minimum standard of

performance, as she would be by an employer.  The failure to recognize these differences is a

recurrent, and deplorable, feature of opinions by administrative law judges in social security

disability cases."); *Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability

to struggle through the activities of daily living does not mean that she can manage the

requirements of a modern workplace."); *Mendez v. Barnhart***,** 439 F.3d 360, 362 (7th Cir. 2006)

("We have cautioned the Social Security Administration against placing undue weight on a

claimant's household activities in assessing the claimant's ability to hold a job outside the home

. . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the

working environment . . . often differ dramatically between home and office or factory or other

place of paid work.").

The ALJ determined that William C.'s medically determinable impairments reasonably

could be expected to cause the symptoms he alleged.  (Tr. 24).  However, his statements about

the intensity, persistence, and limiting effects were not entirely consistent with the medical

evidence and other evidence in the record.  (Tr. 24).  The ALJ considered William C.'s

description of his daily activities in assessing whether his testimony about the effects of his

impairments was credible or exaggerated.  *See* **20 C.F.R. § 404.1529(c)(3)(i)** (explaining that

agency will consider daily activities in evaluating severity of claimant's symptoms).  Activities

of daily living are a proper consideration for an ALJ to weigh in evaluating the claimant's

subjective complaints.  The ALJ did not equate William C.'s daily living activities to the ability

to perform full time work, but rather, cited them as one factor when building an accurate and

logical bridge between the evidence of record and his conclusion.  Additionally, the ALJ

considered William C.'s statements to medical sources, objective medical evidence, third party statements, and the medical opinion evidence. Thus, daily living activities were just one factor the ALJ considered in evaluating William C.'s subjective complaints.

Additionally, William C. contends that the ALJ failed to account for his complaints of fatigue. The ALJ's decision stated that the ALJ "considered the claimant's subjective complaint of fatigue when assessing the residual functional capacity." (Tr. 25). The ALJ noted that William C. testified that fatigue was a side effect of his medications for leukemia. Additionally, the ALJ indicated that William C. had complained of fatigue at office visits with Dr. Hendrick and Dr. Kakani. He also complained at the physical consultative examination that his leukemia made him fatigued. However, the ALJ noted that treating physician, Dr. Kaluta, stated that William C. tolerated his medications with no side effects. (Tr. 25). Additionally, the ALJ noted that William C. was able to drive a car daily, pay bills, and manage money. Nevertheless, to account for William C.'s limitation of fatigue the ALJ found that he had the ability to perform simple, routine, repetitive tasks and work that was not fast-paced in nature.

Yet, William C. has argued that despite the ALJ limiting him to simple, routine, repetitive tasks the ALJ did not fully develop the record in order to determine how often he needed to rest during the day and for how long. William C. testified that he took catnaps and rested during the day because he did not sleep well at night due to his pain. He contends that the ALJ did not ask how many catnaps he took or for how long. Therefore, William C. asserts that he was prejudiced by the ALJ's failure to inquire how long he would be off-task during the day.

The ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Generally, courts will uphold the Commissioner's decision regarding how much evidence to gather. *Nelms*, 553 F.3d at 1098 (citations omitted).

Therefore, a claimant must demonstrate that there was a significant omission—a prejudicial omission. *Nelms*, 553 F.3d at 1098. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

The ALJ considered William C.'s testimony about his catnaps. Additionally, at the hearing the ALJ informed William C., who appeared *pro se,* of his right to representation. Then, in discussing the relevant evidence the ALJ inquired into the amount of days his sleep was disturbed by pain, how many days a week he napped, and the length of those naps. (Tr. 47-48). Accordingly, the ALJ accounted for William C.'s complaints of fatigue and took into consideration that he took catnaps during the day. The Seventh Circuit has held that the ALJ has not failed to adequately develop the record where the claimant does not show that he was prejudiced by a lack of development. *Martin v. Astrue,* 345 F. App'x. 197, 202 (7th Cir. 2009). "An omission is significant only if it is prejudicial" and the plaintiff cites "specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). William C. has not indicated any specific relevant facts that the ALJ failed to consider. Accordingly, the ALJ had enough evidence before him to make a disability determination that was supported by substantial evidence and to adequately develop the record.

William C. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the

appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 23rd day of August, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge